1. TAXATION—GIFTS IN CONTEMPLATION OF DEATH—TRANSFER TAX.

Where a husband signed and had witnessed and delivered to his wife assignments of certain shares and certificates representing the same, and the wife placed them in the safety deposit box from which the husband had taken them, and the key to which he then gave her, and she afterwards paid rental on the box and the husband survived for three years thereafter, it constituted a valid gift to the wife not in contemplation of death, so as not to be subject to the transfer tax.

2. SAME.

Where a husband gave certain stock to his wife, and the dividends were deposited at the time of his death in a bank to the credit of both, which deposit either or the survivor could draw, such money was not subject to the transfer tax.

In the matter of the estate of Lorenzo S. Graves. Appeal from report of appraiser fixing and assessing the transfer tax. Order modified.

William T. Plumb, for comptroller.
John M. Stull, for executor.

BROWN, S. The application before us is that of an appeal taken by Eliza G. Graves, widow of said decedent, from so much of the order and determination made by the surrogate of Monroe county on the 2d day of February, 1906, upon the report of the appraiser in the above-entitled matter, fixing, determining, and assessing the tax upon the property transferred to said Eliza G. Graves and others from the above-named deceased, as finds and determines the cash value of said estate subject to tax to be $178,133.88, and that the aggregate tax to

which the same. is liable is $1,846.21. Also, so much of said order and determination as finds and determines the taxable interest or share of the said Eliza G. Graves to be of the value of $168,409.56, and taxes and assesses, upon and against her share and interest in said estate, the sum of $1,684.10. There are two items, involving different propositions of law, affecting different portions of the property coming to Mrs. Graves.

First. The first that we take up is whether or not Mrs. Graves, the widow of the decedent, is liable to a tax upon a gift made to her by the said decedent of 682 shares of preferred stock and 1,440 shares of common stock of the Otis Elevator Company of the value of $146,490, which gift was made to her upward of three years before the death of decedent. From the evidence presented on this appeal, it appears that Lorenzo S. Graves was a business man who had for many years carried on a large and important business in the city of Rochester, and eventually had consolidated his business with that of other concerns doing a similar business, to wit, the manufacture of elevators, and had received a large amount of stock in the company, which acquired various properties carrying on similar business. In the month of December, 1901, Mr. Graves, the decedent, appears to have determined to present to his wife the shares of stock in question. He went to his attorneys, McGuire & Wood, and told them that he wished to transfer certain stocks to his wife. Before so doing his son and only heir at law was called to the office of the attorneys and informed of what his father's wish was in the matter. The son raised no objection to his father making such a gift, and Mr. McGuire, one of the attorneys, stating that he did not know what the form of assignment was on the back of the certificates, prepared assignments that he approved of as in proper form, and delivered them to Mr. Graves for execution. Mr. Graves, with Mrs. Graves and Fred B. Graves, the son, went to the Security Trust Company, and Mr. Ellery, secretary of the trust company, was called as a witness; and, after bringing the stock out of the trust company vault or box, Mr. Graves signed, in the presence of Mr. Ellery, who also signed as a witness, the transfers of stock, which were pinned to the respective certificates of stock, and handed them to Mrs. Graves, who placed them back in the deposit vault in the same box from which they had been taken; and Mr. Graves delivered a key of said box to his wife, and she subsequently paid the rental for said box.

In the year 1885, some 20 years before his death, the decedent had a long and serious illness. From this, however, he had entirely recovered, and was thereafter actively and successfully engaged in business up to the month of June, 1902. In the month of November, 1900, the decedent suddenly lost the use of his right hand, and for a few days his disability amounted to practically complete loss of the use of the said right hand, but after a few days he partially recovered the use of this hand; and, though he never subsequently acquired complete and free use of it, he was able to be around without any constitutional disturbance or serious symptons of any kind, other than that he could not write thereafter without considerable difficulty. After this difficulty to his right hand came on and for many months thereafter, the general health of the decedent was good, and continued

to be good until the year 1903, when his general health commenced to break down- and he became a complete invalid, and required the attendance of a nurse in the fall of 1903. At the time of the gift of the Otis Elevator Company stock to his wife, in December, 1901, he was in general good health for a man of his age, was attending to his business, and had not, so far as the testimony shows, required the service of a physician for over 15 years.

The learned counsel for the Comptroller of the state claims that this transfer was not a valid transfer, passing the title of the stock to Mrs. Graves; and, even if it were, it was done in contemplation of death, and in either case taxable. The evidence shows that Mr. Graves desired to have some rest from the cares and responsibilities of business. He had reached a time in life that a desire for recreation and some rest was natural. The testimony showing the nature of the transaction at which the transfer was made does not disclose anything but a bona fide transfer of the stock by Mr. Graves to Mrs. Graves, even to the delivery thereof; and the subsequent relations between Mr. and Mrs. Graves show that although the checks for the dividends came to Mr. Graves, for the reason that the transfers had not been sent to the company's office, yet Mr. Graves turned them over to his wife, telling her that they belonged to her, and that the major portion of those dividends were used by herself or placed to her own personal account. We cannot presume from the evidence before us that the transfer was not bona fide. In fact, the whole conduct of Mr. Graves in this transaction makes it clear to the court that he intended that this property should be his wife's absolutely in her lifetime. As to whether the transfer was made in contemplation of death, and thus a gift causa mortis, or whether it should be classed as a gift inter vivos, we are of the opinion, from the evidence before us, that this transfer comes squarely under the decision of the Appellate Division in the Matter of Spaulding, reported in 49 Appellate Division, 541, 63 N. Y. Supp. 694, upon the learned opinion of Justice McLennan, which case was subsequently affirmed by the Court of Appeals (163 N. Y. 607, 57 N. E. 1124) upon said opinion. There was no reason, so far as the evidence shows, to assume that Mr. Graves was in any immediate danger of death. He was not in extremis. He was not even confined to his bed or room, but was attending to business; and, although troubled with a disabled hand, he had no reason to expect immediate dissolution, any more than to expect to live five or ten years or even longer. In fact, for some time thereafter he was able to attend to his duties; but subsequently failing health compelled him to go south and travel, and later, almost two years after this transfer, he did become confined to his house, and died in April, 1905, over three years after the transfer of said stock. The authority of Matter of Spaulding, supra, Matter of Bullard, 76 App. Div. 207, 78 N. Y. Supp. 491, and Matter of Miller, 77 App. Div. 473–481, 78 N. Y. Supp. 930, applied to the facts, as shown by the evidence in this case, most certainly sustains the position that the transfer of this stock to Mrs. Graves was not in contemplation of death, but was a valid gift inter vivos. Furthermore, there is no evidence in this case to show any intent to evade the statute.

We are accordingly of the opinion that the said shares of stock, transferred by Mr. Graves, the decedent, to his wife in his lifetime, are not subject to the transfer tax.

Second. The other item appealed from in said order and determination is on that portion of the order assessing a tax at the rate of 1 per cent. upon the sum of $1,485.25 on deposit in the Flour City National Bank of Rochester at the date of decedent's death, standing in the joint names of Lorenzo S. Graves and Eliza G. Graves, in which account it appeared that either or the survivor might draw. It appears from the evidence that originally this account was opened by the decedent, and the amount on deposit at the time the account was made joint (and an either or survivor account) was made up entirely of moneys belonging to the decedent. Subsequently this money was disbursed in the payment of household expenses, and the amount on deposit at the date of decedent's death was made up entirely of unexpended balances of moneys deposited subsequent to the making of said account a joint account, deposited by Mrs. Graves, that were received by her as dividends on the Otis Elevator stock, subsequent to the time of the gift of the Elevator stock to her.

It is unnecessary in this case to go into a discussion of the relative rights of the deceased and Mrs. Graves in this account. If the money was hers and her husband had no interest in it except to draw with her permission, it would not be taxable. If it was a joint account of husband and wife, whereby either had the absolute right to draw without consulting the other, with right of survivorship in the one surviving, then the case would fall under the decision recently made by this court in the Matter of the Transfer Tax upon the Estate of Julia A. Stebbins, Deceased, 103 N. Y. Supp. 563. Whichever contingency is adopted, the balance in said Flour City Bank account is not taxable.

Accordingly, let an order be entered herein modifying the order of the surrogate determining and assessing the tax heretofore entered herein, by striking out the item taxing the stock transferred by the decedent to Mrs. Graves, and also striking out the tax on the joint account deposited in the Flour City National Bank.

Ordered modified.